**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------

**METEOR AG,**

                         **Plaintiff,**          **08 Civ. 3773 (JGK)**

         - against -

                                                     **OPINION AND ORDER**

**FEDERAL EXPRESS CORPORATION d/b/a FEDEX**
**EXPRESS,**

                         **Defendant.**
------------------------------------------------

**JOHN G. KOELTL, District Judge:**

     The plaintiff, Meteor AG, brings this action against the defendant, Federal Express Corporation d/b/a FedEx Express ("FedEx"), for water damage in the amount of $58,828.40 to a coil winding machine allegedly damaged during shipment from Basle, Switzerland to El Paso, Texas while it was in the defendant's charge. The defendant moves for summary judgment.

     The plaintiff purports to assert its claim under the Warsaw Convention,[1] a multilateral treaty regulating international air commerce. However, the plaintiff's claim is actually governed by the Montreal Convention,[2] a more recent treaty that "unifies and replaces the system of liability that derives from the Warsaw Convention." Ehrlic v. Am. Airlines, Inc., 360 F.3d 366, 371 n.4 (2d Cir. 2004); see also Vigilant Ins. Co. v. World

---
[1] Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000 (1934), 137 L.N.T.S. 11, reprinted in note following 49 U.S.C. § 40105.
[2] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (2003), Treaty Doc. No. 106-45, at 27, 2242 U.N.T.S. 350, reprinted in 1999 WL 33292734 (2000).

1

Courier, Inc., No. 07 Civ. 194, 2008 WL 2332343, at *4 (S.D.N.Y. June 4, 2008).  The applicability of the Montreal Convention, rather than the Warsaw Convention, does not change the analysis in this case.

I

The following facts are undisputed unless otherwise noted.

On or around June 27-28, 2006, the plaintiff, a business located in Switzerland and existing under foreign law, shipped a coil winding machine from Basle, Switzerland to El Paso, Texas.  (Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("Deft.'s 56.1 Stmt.") ¶¶ 2, 3, 6; Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts ("Pl.'s 56.1 Stmt.") ¶¶ 2, 3, 6.)  The defendant, a federally certified all-cargo air carrier based in the United States and operating under authority granted to it by the Federal Aviation Administration, transported the shipment from Basle, Switzerland to Dallas-Fort Worth, Texas.  (Deft.'s 56.1 Stmt. ¶¶ 1, 4; Pl.'s 56.1 Stmt. ¶ 4.)  After the shipment cleared Customs, another transportation company was responsible for its carriage to El Paso, Texas.  (Deft.'s 56.1 Stmt. ¶ 5; Pl.'s 56.1 Stmt. ¶ 5.)

According to the plaintiff, the coil winding machine suffered water damage during shipment for which the defendant is liable in contract and tort.  On July 13, 2006, the plaintiff,

2

through Eunsuk Won, the import/export manager for TNT Freight Management (USA) Inc., (see Won Decl. ¶¶ 1, 4), sent written notice of a damage claim to a street address for a FedEx facility at the Dallas-Fort Worth Airport.  The document, entitled "Preliminary Claim," was addressed to "FED-EX; DFW Airport, Texas; ATTN – CLAIM DEPARTMENT."  (Deft.'s 56.1 Stmt. ¶¶ 7-8; Pl.'s 56.1 Stmt. ¶¶ 7-8.)

According to the defendant, it never received the "Preliminary Claim" document because it did not receive any mail at the street address for its Dallas-Fort Worth facility, although the plaintiff denies that allegation.  (Deft.'s 56.1 Stmt. ¶¶ 9-10; Pl.'s 56.1 Stmt. ¶¶ 9-11.)  The defendant represents that it maintained a claims department in Pittsburgh, Pennsylvania where FedEx customers could send their claims with respect to international shipments, and that the address for the claims department was listed in the terms and conditions of the defendant's Service Guide.  Those terms and conditions were also available online through the defendant's website, at www.fedex.com/us/services/terms.  (Deft.'s 56.1 Stmt. ¶¶ 12-13.)

The plaintiff does not dispute that the defendant maintained a claims department in Pittsburgh where customers could send their claims, or that the address for the claims department was listed in the defendant's Service Guide and online at www.fedex.com/us/services/terms, but the plaintiff

3

disputes the legal significance of those facts. (Pl.'s 56.1 Stmt. ¶¶ 12-13.) The plaintiff also alleges in its opposition papers that in addition to sending written notice of the damage claim to the Dallas-Forth Worth address, Mr. Won emailed notice of the claim by the plaintiff to Vanessa Whiten, an employee in the defendant's sales department. The defendant acknowledges this email in its reply papers. On July 24, 2006, Ms. Whiten responded to Mr. Won's email by instructing him to call a certain hotline telephone number if he wished to initiate a claim. She provided the telephone number in her response. (See Pl.'s Ex. C.)

II

A

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion

stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.  The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment is appropriate if it appears that the nonmoving party cannot prove an element that is essential to the nonmoving party's case and on which it will bear the burden of proof at trial.  See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex, 477 U.S. at 322; Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United

5

States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998); Singh v. New York City Off-Track Betting Corp., No. 03 Civ. 5238, 2005 WL 1354038, at *1 (S.D.N.Y. June 8, 2005).

B

As noted above, the plaintiff's claim is governed by the Montreal Convention, because the Montreal Convention replaced the Warsaw Convention as the treaty governing international carrier liability, and both the United States and Switzerland

are signatories to the Montreal Convention.[3]  However, the Montreal and Warsaw Conventions are often referred to interchangeably by courts, see Sobol v. Continental Airlines, No. 05 Civ. 8992, 2006 WL 2742051, at *2 n.2 (S.D.N.Y. Sept. 26, 2006), and "the case law regarding a particular provision of the Warsaw treaty applies with equal force regarding its counterpart in the Montreal treaty."  Best v. BWIA West Indies Airways Ltd., 581 F. Supp. 2d 359, 362 n.1 (E.D.N.Y. 2008); see also Paradis v. Ghana Airways Ltd., 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004) (finding that Montreal Convention enjoys substantially the same preemptive effect as Warsaw Convention).  For purposes of the analysis in this case, there is no meaningful difference between the governing provision of the Montreal Convention (Article 31) and its counterpart in the Warsaw Convention (Article 26).  Therefore, the Court treats the Conventions interchangeably and applies the case law regarding Article 26 of the Warsaw Convention to Article 31 of the Montreal Convention.

As a treaty of the United States, the Montreal Convention is considered federal law for subject matter jurisdiction purposes and is the supreme law of the land.  See Best, 581 F. Supp. 2d at 362.  Where applicable, the Montreal Convention preempts any federal or state common law that may typically

---

[3]    The list of signatories to the Montreal Convention is available at http://www.i.cao.int/icao/en/leb/mtl99.pdf.

apply.  See Sysco Food Servs. of Hampton Roads, Inc. v. Maersk Logistics, Inc., No. 03 Civ. 7384, 2006 WL 2506437, at *5 (S.D.N.Y. Aug. 29, 2006).  However, parties are free to fill in gaps in the Montreal Convention by contract.  See Montreal Convention, Article 27 ("Nothing contained in this Convention shall prevent the carrier from . . . laying down conditions which do not conflict with the provisions of this Convention."); cf. Zicherman v. Korean Airlines Co., Ltd., 516 U.S. 217, 226-27 (1996) (holding that domestic law applied to certain question of damages where Warsaw Convention was silent and behavior of contracting parties indicated understanding that domestic law would apply).

The provision of the Montreal Convention that governs damage claims is Article 31.  Article 31 provides, in relevant part:

> 2. In the case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within . . . fourteen days from the date of receipt in the case of cargo.  In the case of delay, the complaint must be made at the latest within twenty-one days from the date on which the baggage or cargo have been placed at his or her disposal.
>
> 3. Every complaint must be made in writing and given or dispatched within the times aforesaid.
>
> 4. If no complaint is made within the times aforesaid, no action shall lie against he carrier, save in the case of fraud on its part.

Article 31 is silent as to how notice of a damage claim should be given or dispatched, aside from the requirements that it be made in writing and submitted within the given time period.  However, the defendant's relevant terms and conditions of carriage are plainly set out in its Service Guide under the caption: "FedEx Express Terms and Conditions, International Shipments (U.S. Edition): Claims."  Those conditions, which were also available online, provided a specific process for dispatching notice of damage claims.  The process was as follows:

> K.   Written claims must be sent (via U.S. Postal Service) to:
>
> > FedEx Cargo Claims Department
> > P.O. Box 256
> > Pittsburgh, PA 15230

(See Nov. 5, 2008 Bridwell Decl. Ex. C; Deft.'s 56.1 Stmt. ¶ 13.)[4]

The parties in this case used an air waybill to describe their shipping arrangement.  "An air waybill is a written document describing the shipping arrangement between the air carrier and the shipper."  Tai Ping Ins. Co., Ltd. v. Nw. Airlines, Inc., 94 F.3d 29, 30 n.1 (2d Cir. 1996); see also

---

[4]   The website at which the defendant's terms and conditions of carriage were available, www.fedex.com/us/services/terms, currently also provides a customer service number that putative claimants can call if they wish to initiate a claim.  There is no indication on the record, however, whether the customer service number was posted on the website in July 2006 when the plaintiff attempted to dispatch notice of its claim.

Travelers Indem. Co. v. AMR Servs. Corp., 921 F. Supp. 176, 179 n.3 (S.D.N.Y. 1996) ("[a]n 'air waybill' is essentially a contract of carriage . . . ."). The air waybill in this case incorporated the defendant's "conditions of carriage" into the shipping contract. The air waybill provided:

> 2.2  To the extent not in conflict with the foregoing, carriage and other related services performed by each Carrier are subject to:
>
> . . . .
>
> 2.2.2  provisions contained in the air waybill, Carrier's conditions of carriage and related rules, regulations, and timetables, and applicable tariffs of such Carrier, which are made part hereof, and which may be inspected at any airports or other cargo sales offices from which it operates regular services.  When carriage is to/from the USA, the shipper and the consignee are entitled, upon request, to receive a free copy of the Carrier's conditions of carriage.

(Dec. 18, 2008 Bridwell Decl. Ex. A.)

### III

The defendant argues that the plaintiff failed to provide timely notice of its claim under Article 31 of the Montreal Convention because it did not dispatch notice to the department within FedEx that was authorized to receive notice – namely, the claims department.  Rather, the plaintiff mailed notice to a street address for a FedEx facility in Dallas-Forth Worth and

10

emailed notice to an employee in the FedEx sales department, Ms. Whiten.  The defendant also argues that irrespective of when the plaintiff dispatched notice of its claim, it was untimely because the defendant did not actually receive such notice.

The plaintiff argues that because the Montreal Convention does not specify that a claimant must confirm where to send notice of a claim against the carrier, its dispatch of notice to the Dallas-Forth Worth address and to a sales employee via email, instead of to the defendant's claims department, was sufficient to fulfill the timely notice requirement in Article 31 of the Montreal Convention.  The plaintiff also argues that only dispatch of notice by the claimant, rather than receipt of notice by the carrier, is required for timely notice under the Montreal Convention.

Article 27 of the Montreal Convention allows parties to fill in gaps in the Convention by contract.  That is precisely what the parties did in this case.  In its terms and conditions of carriage, the defendant specified how to dispatch notice of a damage claim, a subject on which the Montreal Convention is silent.  A putative claimant was required to send notice of its claim by mail to the defendant's claims department in Pittsburgh.  It is also apparent, from Ms. Whiten's response to Mr. Won's email, that the defendant maintained a telephone hotline that a putative claimant could consult for instructions

11

concerning dispatching notice of its claim.  In light of Ms. Whiten's response, there is every reason to believe that a putative claimant not knowing how or where to send notice of its claim could find out simply by calling the defendant and asking for instructions.  The plaintiff does not suggest otherwise.

It was eminently reasonable for the defendant to channel damage claims against it to a specific department.  The defendant is a large company that operates in over 220 countries and employs over 143,000 personnel.  (See Dec. 18, 2008 Bridwell Decl. ¶ 5.)  The alternative to channeling damage claims – allowing notice of a claim provided to any employee or any department to suffice as notice to the defendant of that claim – would make it difficult to keep track of claims in an organized fashion.

The plaintiff argues that because the Montreal Convention "makes [no] mention of checking with the carrier's website as a prerequisite to 'dispatching' timely, written notice," the plaintiff cannot be held to the process provided for in the terms and conditions of carriage set forth in the defendant's Service Guide and available online at www.fedex.com/us/services/terms.  This argument is unavailing.  There was no need to check the defendant's website to ascertain how to dispatch notice of a claim.  Rather, the provision for dispatching notice of a claim was listed in the defendant's

12

Service Guide, a free copy of which was offered to the plaintiff upon request. The plaintiff asserts that "the terms and conditions of the Federal Express Service Guide ha[ve] [no] bearing on this motion for summary judgment." (Pl.'s 56.1 Stmt. ¶¶ 12, 13.) But it is perfectly acceptable for parties to incorporate the terms of external documents, including a carrier's Service Guide, into a contract by referring to those documents in the air waybill. See, e.g., Brink's Ltd. v. S. African Airways, 93 F.3d 1022, 1035 (2d Cir. 1996) (air waybill can incorporate "readily available" timetables by reference); Levy v. Delta Airlines, No. 02 Civ. 477, 2004 WL 2222149, at *4 (S.D.N.Y. Sept. 30, 2004) ("Delta provided a notice that published tariffs were incorporated by reference into the contract of carriage. This means that Delta's Tariff Rule 45 was part of the contract of carriage . . . ."); Samtech Corp. v. Federal Express Corp., No. 03 Civ. 0024, 2004 U.S. Dist. LEXIS 27123, at *12 (S.D. Tex. May 28, 2004) ("A carrier may supplement the airbill's terms by incorporating other documents, such as a service guide, by reference. FedEx's Service Guide [was] incorporated into the contract of carriage with Samtech by reference in the airbill . . . .")(internal citations omitted); Williams v. Federal Express Corp., No. 99 Civ. 6252, 1999 U.S. Dist. LEXIS 22758, at *1 (C.D. Cal. Oct. 4, 1999) ("The contract of carriage consists of a FedEx Airbill and the June 1995 FedEx

Service Guide incorporated therein."). In this case, the air waybill explicitly referred to the defendant's "conditions of carriage," which were contained in the terms and conditions of the Service Guide. The defendant made the terms and conditions of the Service Guide available to the plaintiff by offering the plaintiff a free copy. Therefore, the air waybill incorporated by reference the terms and conditions of the Service Guide.

It is irrelevant that the air waybill never used the words "Service Guide" in referring to the contents of that document. The plaintiff has not asserted any confusion as to whether the "conditions of carriage" incorporated by the air waybill referred to the terms and conditions of the Service Guide. Indeed, at oral argument, counsel for the plaintiff conceded that there were no conditions of carriage other than those contained in the Service Guide, and that it was therefore clear that the air waybill was referring to the Service Guide. No magic words are needed to incorporate a document into a contract by reference. See, e.g., Lowry & Co. v. S. S. Le Moyne D'Iberville, 253 F. Supp. 396, 398 (S.D.N.Y. 1966) (Weinfeld, J.) ("It is not necessary, in order to incorporate by reference the terms of another document, that such purpose be stated in haec verba or that any particular language be used . . . . [I]t is settled doctrine that a reference in a contract to another writing, sufficiently described, incorporates that writing.").

14

The air waybill sufficiently described the Service Guide, because the waybill referred to the defendant's "conditions of carriage" and offered the plaintiff a free copy of those conditions of carriage, which were contained in the Service Guide.

This case is distinguishable from Sotheby's v. Federal Express Corp., 97 F. Supp. 2d 491 (S.D.N.Y. 2000), in which Judge Chin held that an air waybill referring to the carrier's "conditions of carriage" had not incorporated the carrier's Service Guide.  Id. at 500.  In Sotheby's the condition of the Service Guide that the carrier sought to enforce was in direct conflict with the face of the air waybill.  See id. at 499.  In this case, the terms and conditions in the Service Guide filled in a gap in the waybill and did not contradict it.  Moreover, the waybill specifically referred to the conditions of carriage which were freely available to the shippers.  There is no reasonable dispute that those conditions of carriage were the terms and conditions included in the Service Guide and available online.  (See Nov. 5, 2008 Bridwell Decl. ¶¶ 7-8.)

In sum, the gap in the Montreal Convention with respect to how notice of a damage claim should be dispatched did not give the plaintiff the right to dispatch such notice however it saw fit.  The parties permissibly contracted to fill the gap in the Convention by providing for a specific process for dispatching

15

notice of a damage claim. The plaintiff failed to follow that process, which simply involved sending notice of the claim to the defendant's claims department, and thus failed to provide notice of its claim in a manner contemplated by the parties. Therefore, the plaintiff failed to dispatch timely notice of its claim under Article 31 of the Montreal Convention, and "no action shall lie against the carrier." Montreal Convention Article 31. Summary judgment with respect to the plaintiff's claim is thus warranted, and it is unnecessary to address the parties' arguments as to whether a claim must merely be dispatched, or must also be received, in order to achieve timely notice under the Montreal Convention.

## CONCLUSION

For all of the foregoing reasons, the motion for summary judgment dismissing the Complaint against defendant Federal Express Corporation is **granted**. The Clerk is directed to close Docket No. 21.

**SO ORDERED.**

Dated:   New York, New York
         January 30, 2009

_____
John G. Koeltl
United States District Judge